Moncure, P.,
after stating the case, proceeded: The only question involved in this appeal is, as to the propriety of the decree for the payment of the amount of the debt due by Obadiah Parmer to the estate of his intestate, Archer Parmer, into court, or to the receivers appointed to receive and dispose of it as directed by the said decree.
• The following appear to be the well settled doctrines of the law on this subject. I quote from 2 Lomax on Executors, 492 marg.; but I might quote to the same effect, and almost in the same words, from all the elementary works on the subject; for they all speak almost in the same language; and there appears to be no conflict among them. According to the present practice in England, the court will immediately, upon the coming in of the answer of an executor or administrator, order so much as he. admits to have in his hands, of the property of the deceased, and after all deductions or claims against the estate, to be paid [into court; though it was formerly thought necessary for the plaintiff to show that *151 the executor or administrator had abused Ms trust, or .... . that the fund was m danger from Ms insolvent circumstances. The same order may be obtained where the ■ executor or administrator admits a balance in Ms hands in his examination, or on the master’s report. An executor who had admitted a large balance of the personal estate to be in Ms hands, was ordered to pay the whole into court, although he stated that an action at law was pending against him for a debt to a considerable amount due from the testator, but with liberty, in case the plaintiff in the action should recover, to apply to the court to have a sufficient sum paid out again. Where an executor admits himself to have been a debtor to the testator at the time of his death, this is held to be a clear admission of assets in Ms hands to the amount of the debt,' and he is compelled to pay it into court accordingly—which is precisely such a case as we now have before us. In tMs case the person to pay, and the person to receive, being the same, the court assumes that what ought to be done, has been done; and-orders the payment, not as of a debt by a debtor, but as of moneys realized in the hands of the executor. Where an executor admits that he has received a sum belonging to the testator’s estate, but adds that he has made payments, the amount of which he-does not specify, the court will allow him to verify the amount of his payments by affidavit, and order him, on motion, to pay the balance into court. Where money was admitted by an executor to be in the hands of his partner, it was considered in Ms own hands, for the purpose of being ordered to be paid into court. Where the executor admits that a certain-amount of assets has come to Ms possession, he may discharge himself from the payment of it into court, wholly or partially, by taking credit for sums which he shows a right to retain for his own debt, due from the testator, *152 or to have allowed him on any just ground, of which are undisputed. The general rule as to payment of money court is, that the plaintiff must be solely entitled, or have such an interest jointly with others as to entitle them, on behalf of themselves and of those others, to have the fund secured.
These, I believe, are the most material principles that have been settled on the subject; and I have stated them thus fully, in order to show what the law in regard to it is, in the various cases to which it may be applicable.The authorities, or most of them, cited in support of these principles respectively, by the learned author to whose work I have referred, are as follows: Strange v. Harris’ ex’or, 3 Bro. C. C. 365; Blake v. Blake, 2 Sch. and Lef. R. 26; Rutherford v. Dawson, 2 Ball. & B. R. 17; Mortlock v. Leathes, 2 Meriv. R. 491; Rothwell v. Rothwell, 2 Sim. and Stu. R. 218; Richardson v. Bank of England, 4 Myl. & Cr. R. 165; Anon. 4 Sim. R. 359; Johnson v. Aston, 1 Sim. & Stu. R. 73.; Middleton v. Poole, 2 Colly. R. 246; Roy v. Gibbon, 4 Hare’s R. 65; Nokes v. Seppings, 2 Phill. R. 19.
In Strange v. Harris’ ex’or, the modern English practice is clearly, though briefly announced; and in a note to Perkins’ ed. of Bro. C. C., the works on Chancery Pr., both English' and American, which treat of. the subject, are referred to.
In Blake v. Blake it was urged by the Solicitor General, for the guardian and executor, that as the testator had committed the estate to his management, and as there was no imputation of insolvency or misconduct on his part, the court ought not to take the fund out- of his hands. But the Lord Chancellor, Redesdale, said: “ Certainly the old law was as stated at the bar, but modern decisions are different; and it cannot be doubted that the alteration was very much for the benefit of all *153 parties. Wherever there are no debts, or the debts are all paid, and no purpose for which it is to be left outstanding, the present practice is, to have the money lodged in court. When- there, it is always ready for those entitled to it, when the time comes for paying it to them; and the executor is dischai’ged from any responsibility about it. In England, the good consequences of this alteration of the law are universally felt and acknowledged. I remember the case of a minor entitled to a large personal fortune; part of it was ordered into court, and another part allowed to remain with the executor, who was of acknowledged credit. The result was, when the minor attained his full age, he had 80,000 C. stock assigned to him by the accountant-general; but the sum that was left with the executor was forever lost.” “ I make the order in this ease,” proceeded the Lord Chancellor, “ on the general principle, without the least imputation upon the executor.” In this case, it will be observed, the suit was brought by the testator’s children; and the motion was to have the personal fund paid into court and laid out for their benefit, the debts of the testator being dischai’ged. This accounts for the language of the court as to there being no debts, or the debts being all paid. If the plaintiffs had been creditors, entitled to the fund, it would have been paid into court on their motion, and for their benefit. In Rutherford v. Dawson, 2 Ball & Beat. R. 17, the plaintiff sued an executor for an account of his testator’s assets and payment of a legacy. The defendant, in his answer, admitted assets in his hands, equal to the payment of the legacy; but claimed to retain it for the purpose of satisfying debts still due and owing by his testator. There was no allegation that the defendant was insolvent, or in bad circumstances; but that he was engaged in trade. The plaintiff moved for an order to pay the *154 money into court; but the Lord Chancellor Manners refused to make the order, saying: “ The executor is never called on to lodge money in court, except when there is an allegation and affidavit of insolvency, or where he admits having in his hands a clear balance after payment of all debts;” and thatwas Lord Bedesdale’s opinion in the case referred to—of Blake v. Blake. Here no such balance is admitted, and the motion must be refused.” in this case, too, let it be observed, that the plaintiff sued for a legacy, and not for a debt; which explains the meaning of what was said by the court.
In Mortlock v. Leathes, 2 Meriv. R. 491, the bill was for an account by a residuary legatee against an executor, who, it was averred, was himself indebted to the testatrix in a sum of £450. The answer of the executor admitted that there was an unsettled account between him and the testatrix, upon which a balance, to the amount of £368 8s. 6d. remained due to the estate; but it went on to state that the debts of the testatrix were not all paid, and that there were several then outstanding, to which he, the executor, was, to the extent of assets, including that balance, liable. The plaintiff moved to have the said balance paid into court; which motion was resisted, on the ground above stated. The Chancellor, Lord Eldon, inquired when the testatrix died; and being answered, in March 1814, (which was three years before,) said that all the debts ought to have been paid; and made the order. In our case, the intestate had been dead nearly five years, and the debt of the administrator to the estate had been due ten years, when the order was made for its payment into court. But a more important difference between the two eases is, that then the plaintiff was a residuary legatee; while here the plaintiff was a creditor of the estate, suing for himself and all the other creditors.
*155 In Richardson v. The Bank of England, 4 Myl. and Cr., 18 Eng. Ch. R. 165, in which the principles on this subject were reviewed by Lord Oh. Cottenham, he remarked: “It was ingeniously attempted to assimilate this case to that of an executor who is ordered to pay a balance of assets into court; although, as a legatee, he may be afterwards entitled to receive part of it back. I see no analogy between the two cases. The executor holds the assets, as a trustee for creditors, who have an interest in the fund; and his claim, as legatee, is in a subordinate and totally different character,” &c.
ÍTow, let us apply these principles to this case, and see whether the court below was authorized by them to make the order it did, for the payment of the money into court, or into the hands of the receivers, which is the same thing. The suit was a creditors’ suit, for an account of the debts due by the estate, and of the estate, real and personal, and for payment of the debts out pf the estate. In the very nature of the suit, it was at least a doubtful question whether the personal estate would be sufficient for the payment of the debts. There was due to the plaintiffs alone a debt of $815, with interest from the 21st of March 1868, for which a judgment had been recovered. This debt, of itself, was much more than one-half of the whole fund ordered to be paid into court. A decree was made for the payment of the said debt by the administrator, out of the money which he owed to the estate. But, instead of making such payment, he had that decree set aside, upon the ground that it was erroneous to have rendered it until there was an account of the assets and liabilities of the estate of his intestate; and at his instance, a decree was made for an account of the said assets and.of all the debts due and owing by the said estate, and of the priorities thereof. This was in effect a declaration of the admin *156 istrator that the assets in his 'hands, or with which he was chargeable, were insufficient to pay the whole ■ amount of the debts due by his intestate; and would have, therefore, to be apportioned among the creditors, or applied in a due course of administration, according to the legal priorities of the said debts. Had the said assets been certainly sufficient for the payment of all of the said debts, it -would have been the duty of the administrator to have- made such payment accordingly,- and especially to have paid the debt-for which the plaintiffs first obtained a judgment at law and then a decree in equity against him. Instead of doing that, the administrator' waited ten years, without paying a dollar of the debt which he_ owed to his intestate, or even bringing it into his administration account; and, so far as the record shows, he made no disclosure in regard to it, until he was compelled to do so in his answer to the plaintiffs’ bill.
How, then, can he complain of being required at last to pay this money into court? Has he not had an opportunity, for a long time, for a series of years, to apply this money in a due course of administration ? And has he not wholly failed to do so? In one ease, we have seen, that Lord Eldon said, after the testator had been dead three years, that all the debts ought to have been .paid; and therefore he ordered the fund to be paid into court at the suit of a residuary legatee, although it appeared that, in point of. fact, all the debts had not been paid. How much more might such an order be made in this suit, which is a creditors’ suit, and where the intestate has been dead nearly five years; and about ten years have elapsed since the debt became due by the administrator to his intestate. The case comes directly within the principles before laid down; and the court below, in my opinion, undoubtedly had the power to call in the *157 fund. I cannot say that it was an improper exercise of the judicial discretion of the court to do so, even if it can he considered proper in this court to control such discretion in any case. It is an eminently conservative power, as we have seen, especially in one of the cases before referred to. If any inconvenience or hardship should result from it, such effect would be the consequence of neglect or breach of trust on the part of a fiduciary. In a creditor’s suit, especially, it seems to be fit and proper that the court should have power to call in the assets, from the hands of a personal representative. In such a suit, the court, in effect, becomes the personal representative, has control of the assets, reduces them into possession, and applies them in a due course of administration. The institution of such a suit, -or, at all events, a decree for an account therein, puts an end to the power of the personal representative to administer the assets, and operates as an injunction of all suits against him by the individual creditors of the estate.
If the money of the estate, in the hands of the administrator in this case was not more than enough to pay its debts, as his conduct plainly implied, then, of course, it was right to require him to pay it into court. The money in that case belonged to the creditors, and to them alone. If it was more than enough to pay the debts, so that a shrplus would remain for the next of ldn, then it was the duty of the administrator to have paid the debts and distributed the surplus among the next of kin. He no doubt well knew how much was due by the estate, and to whom it was due. He had ample time to inform himself on that subject, as it was his duty to do. It is not probable that his intestate owed many debts, or that they were of a complicated nature. It does not appear that he had been a merchant, or engaged in any business which was likely to involve the *158 settlement of Ms estate in difficulty.- If the administrator had rendered to the court below a satisfactory ac- “ count. of the amount of debts remaining due by the estate, that court would, doubtless, have required such amount only to be paid into court; leaving the balance in his hands for distribution, as the distributees were not complaining, nor asking for a decree against him. Instead of that, he rendered no such account, but asked that an account of the assets and liabilities of the estate should be taken by a commissioner of the court; and the natural consequence was, the money having already remained so long in his hands, that he was required to pay the whole amount into court. An administrator has no right to use the assets of the estate he represents for his own benefit; though he often seems to think he has; or at least acts as if he had such right. When he does so, he commits a breach of trust, and is tempted to postpone the payment of the debts of the estate, the settlement of his administration account, and the distribution of the surplus among the next of kin. And, to effect his selfish ends, he will. even involve the creditors and distributees of the estate in an expensive and protracted litigation. A salutary remedy for these evils often is, to call the money into court, and then proceed with the necessary settlement. When the money is in court, all parties are interested—even the administrator himself—in having the settlement made, and the suit ended as soon as possible.
I am, therefore, of opinion, for the reasons aforesaid, that there is no error in the decree appealed from. I deem it unnecessary to notice what is said in the decree about the administration bond or the penalty thereof; or the currency, in reference to which the penalty was fixed or the personal estate was valued; being of opinion, without reference to those considerations, that there is *159 no error in the decree. I have taken no notice, in the foregoing opinion, of a petition to set aside the said decree, which is copied at the end of the record. The said petition is not a part of the record; and even if it was, the matters therein stated, though proved to be true, would not affect the propriety of the decree.
I am for affirming the decree.
The other Judges concurred in the opinion of Mon-cure, P.
Decree appirmeb»